IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MONIQUE TOLSTON,

    Plaintiff,

v.

CHARLES DREW HEALTH CENTER, Inc.;

    Defendant.

**8:16CV176**

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Charles Drew Health Center, Inc.'s ("CDHC") motion to exclude the testimony of Lucile Woodard, M.D. ("Dr. Woodard"), under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Filing No. 61. This is an action for discrimination in employment brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *as amended*; the Nebraska Fair Employment Practices Act ("NFEPA"), Neb. Rev. Stat. § 48-1104, the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. § 48–1228, *et seq.*, the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and the common law and public policy of the State of Nebraska. The plaintiff, Monique Tolston, M.D. ("Dr. Tolston") alleges gender discrimination; retaliation for engaging in protected activities; retaliation for reporting a violation under the EMTALA; a retaliatory hostile environment; breach of contract and violations of the NWPCA in connection with the termination of her employment at CDHC. Jurisdiction is based on 28 U.S.C. § 1331.

I.    BACKGROUND

Dr. Tolston worked as a family practice physician for CDHC from 2008 until her termination on August 7, 2015. Plaintiff alleges that in November 2014, she reported an unlawful medical practice to CDHC's Medical Director and she was reprimanded for her report, received a performance evaluation of below satisfactory, and was later terminated without notice in contravention of her employment agreement. The plaintiff has designated Dr. Woodard to provide expert opinion testimony regarding her psychological conditions, aggravation of conditions, need for medications, treatment, and potential permanency of her conditions. The defendant challenges Dr. Woodard's testimony, contending that Dr. Woodard lacks the specialized knowledge, education, skill, experience, and training necessary to render an opinion on the diagnosis, permanency, or causation of psychological conditions or aggravations of such conditions because she is a family medicine doctor and not a psychologist or psychiatrist. Dr. Woodard is also the plaintiff's treating physician and is a fact witness. The defendant concedes that Dr. Woodard may testify regarding her personal interactions, observations, and treatment of the plaintiff.

A.  Facts

The record shows that Dr. Lucille Woodard is who a board certified physician in family medicine. She attended medical school at the University of Nebraska and graduated in 2005. She completed a six-week rotation in psychiatry in medical school where she received specialized training in treating patients with mental health issues. She completed the Clarkson Family Medicine residency and during that three-year residency she treated patients who were diagnosed with depression and anxiety. She

has been licensed to practice medicine in the State of Nebraska since 2005. She participates in continuing medical education every year.

Dr. Woodard was employed at CDHC as a family physician from 2008 to 2011. She was employed as a family medicine doctor from 2011 to 2016 at Nebraska Medicine in Bellevue, Nebraska, and served as the plaintiff's primary care physician during that time. She treated the plaintiff at two office visits in 2015. She is now employed at the Veterans' Administration-Nebraska-Western Iowa as the women's health medical director.

She routinely treats patients with mental health issues. She estimated that 30 percent of her patients suffer from some sort of mental health disease. She also stated that over sixty percent of mental health treatment is delivered by primary care physicians. She testified that it is within the scope of her practice to treat patients with mental health conditions. While she was employed at defendant CDHC she treated psychiatric patients and CDHC billed patients for her services.

Dr. Woodard stated that her medical opinions were formed to a reasonable degree of medical certainty. She testified that the plaintiff's pre-existing mental health conditions were aggravated by the protected activities she engaged in in late 2014 and by her termination in August 2015.

II.  LAW

District court judges "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Redd v. DePuy Orthopaedics, Inc.*, No. 16-3428, 2017 WL 2859536, at *2 (8th Cir. July 5, 2017) (quoting *Daubert*, 509 U.S. at 589). Under Federal Rule of Evidence 702, the opinion of an expert witness is

reliable if (1) it is based on sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case. *Id.* An expert opinion is relevant if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003). The rule clearly is one of admissibility rather than exclusion. *Id.*

"The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). To the extent a party challenges the probative value of the evidence, an attack upon the probative sufficiency of evidence relates not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve. *United States v. Beasley*, 102 F.3d 1440, 1451 (8th Cir. 1996); *see United States v. Dico, Inc.*, 266 F.3d 864, 871 (8th Cir. 2001) (holding "the sufficiency of the factual basis of ... [an expert's] theory was open to any challenge [the defendant] . . . desired to mount on cross-examination, but that sufficiency was not a basis for excluding [the expert's] testimony altogether")).

"[C]ases are legion that, correctly, under *Daubert*, call for the liberal admission of expert testimony." *Johnson v. Mead Johnson & Co.*, LLC, 754 F.3d 557, 562 (8th Cir. 2014); *see, e.g., United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (holding that doubts about the usefulness of expert testimony are resolved in favor of admissibility); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)

4

(holding that expert testimony should be admitted if it "advances the trier of fact's understanding to any degree" (quotation omitted)); *Lauzon,* 270 F.3d at 686 (Rule 702 "clearly is [a rule] of admissibility rather than exclusion" (internal quotation omitted)). "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson,* 754 F.3d at 564 (quoting *Daubert,* 509 U.S. at 590, 596).

In general, differential diagnoses are admissible under *Daubert* unless scientifically invalid. *Id.* at 563; *see Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (per curiam) (stating that a medical opinion about causation, based upon a proper differential diagnosis, is sufficiently reliable to satisfy *Daubert*). "In performing a differential diagnosis, a physician begins by 'ruling in' all scientifically plausible causes of the plaintiff's injury" and "then 'rules out' the least plausible causes of injury until the most likely cause remains. *Glastetter,* 252 F.3d at 989; *see also Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 262 (4th Cir. 1999) ("A reliable differential diagnosis typically, though not invariably, is performed after 'physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests,' and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.") (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997).

5

Experts are not required to rule out all possible causes when performing the differential etiology analysis. *Lauzon*, 270 F.3d at 693; *In re Prempro Prods. Liab. Litig.*, 586 F.3d 547, 566–67 (8th Cir. 2009) (rejecting the argument that expert testimony on the cause of plaintiff's breast cancer must be excluded because the cause of breast cancer is generally unknown and because the plaintiff had known risk factors). Further, "a differential expert opinion can be reliable even 'with less than full information.'" *Johnson*, 754 F.3d at 564 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 759 (3d Cir. 1994)). Instead, such considerations go to the weight to be given the testimony by the factfinder, not its admissibility. *Id.*; *see also In re Prempro*, 586 F.3d at 566.

III. DISCUSSION

The record shows that Dr. Woodard is qualified to express her expert opinion. She relies on her examinations of the plaintiff, the plaintiff's history, and on her own experience treating the plaintiff and experience in diagnosing and treating mental illness. The principles she applies are standard, accepted medical principles, and her opinion has a sufficient basis in fact since she treated and diagnosed the plaintiff. Causation is part of a differential diagnosis, which is generally accepted under *Daubert*. The court finds that Dr. Woodard's methodology "fits" the facts of the case and the proffered testimony will be helpful to the jury. Any criticism of her testimony is properly the subject of thorough cross-examination and is a reason to totally exclude the testimony.

At this time, it appears that plaintiff's *Daubert* objections go more to the weight than to the admissibility of the expert's testimony, subject to a proper showing of foundation and reliability. The record shows that Dr. Woodward was properly disclosed

6

as an expert witness as well as a fact witness and is qualified to testify to the opinions expressed in her report. Her opinion was expressed to a degree of medical certainty and satisfies *Daubert's* reliability requirements.

The sufficiency of the opinions and the weight to be accorded them are matters for the jury to determine. The court will properly limit the expert's testimony to matters that would be helpful to the jury and are within the expert's area of medical expertise. Accordingly, the court finds the defendant's *Daubert* challenges should be rejected and the defendant's motion for an order in limine excluding the evidence should be denied.

IT IS ORDERED:

1. Defendant CDHC's motion in limine (Filing No. 61) is denied.

Dated this 19th day of July, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge